IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Bruce,<br><br>  Petitioner,<br><br>vs.<br><br>Craig Apker,<br><br>  Respondent. | No. CV 08-619-TUC-FRZ (JCG)<br><br>**ORDER** |

Pending before the court is a Petition for Writ of Habeas Corpus brought pursuant to Title 28, United States Code, Section 2241.[1] The petitioner, Kevin Bruce, currently confined in the Satellite Prison Camp of the United States Penitentiary in Tucson, AZ challenges the decision of the Bureau of Prisons (BOP) to place him in a Residential Re-Entry Center ("RRC") for the final six months of his incarceration. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for a Report and Recommendation. Before the Court are the Petition (Doc. No. 1), Respondent's Answer (Doc. No. 10) and Petitioner's Reply. (Doc. No. 12.)

## **Summary of the Case**

Petitioner is serving a 30-month sentence for Use of a Communication Facility in Committing a Drug Offense in violation of 21 U.S.C. § 843(b). (Answer, Ex. 1, Attachment 2.)

---

[1] 28 U.S.C. § 2241 is the federal habeas corpus statute that permits a prisoner to challenge his imprisonment on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. *See generally Peyton v. Rowe*, 391 U.S. 54 (1968).

1 Petitioner is projected to be released from custody on November 17, 2009, via Good Conduct
2 Time Release. (*Id*.)

3     On April 9, 2008, the Second Chance Act of 2007 ("SCA") was signed into law. *See* 18
4 U.S.C. §§ 3621 and 3624. The SCA sets forth standards by which the BOP is required to make
5 decisions concerning prisoner placement in RRCs. The Act requires the Director of the Bureau
6 of Prisons "to the extent practicable, ensure that a prisoner serving a term of imprisonment
7 spends a portion of the final months of that term, not to exceed 12 months, under conditions that
8 will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that
9 prisoner into the community. Such conditions may include a community correctional facility."
10 18 U.S.C. § 3624(c)(1). This provision previously read: "The Bureau of Prisons shall, to the
11 extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable
12 part, not to exceed six months, of the last 10 percent of the term to be served under conditions
13 that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's
14 re-entry into the community."

15     On April 14, 2008, the Federal Bureau of Prisons issued a "Memorandum for Chief
16 Executive Officers" regarding pre-release residential re-entry center placements following the
17 Second Chance Act of 2007. (Answer, Ex. 1, Attachment 4.) The memorandum directed the
18 BOP to reconsider placement decisions for "inmates previously reviewed for pre-release RRC
19 placements under any circumstances and not yet transferred to an RRC" using the guidelines
20 set forth in the SCA. (*Id.*)

21     On May 8, 2008, Petitioner was reviewed for placement in a RRC. (Answer, Ex. 2,
22 Attachment 1.) Petitioner and a member of the review team signed the Program Review Report.
23 (*Id.*)

24     On May 11, 2008, Petitioner initiated an administrative grievance process by filing an
25 Informal Resolution Form with the BOP. (Petition, pg. 23.) Petitioner alleged that the BOP
26 erred in failing to consider his request for "12 months halfway house and home confinement"
27 and requested that the BOP Unit Team authorize Petitioner's release to a halfway house for 12
28 months, followed by three months of home confinement. (*Id*.) This would result in Petitioner's

- 2 -

release in August 2008. (*Id.*) In response, the correctional counsel advised Petitioner that his current earliest eligibility date for RRC placement was August 31, 2008, that if guidelines for additional RRC were changed, Petitioner's placement would be re-reviewed, and that a period of home confinement was determined by RRC staff after placement. (*Id.*)

On May 13, 2008, Petitioner filed a "Request for Administrative Remedy" appealing the denial of his informal grievance. (Petition, pg. 20.) Petitioner contended that his May, 2008 review did not comply with the SCA. Petitioner also argued that the BOP had the authority to release him directly to home confinement. (*Id.*) Petitioner asked the BOP to grant his request for release to home confinement for 6 months and RRC for 12 months which would result in his immediate release. (*Id.*)

On July 1, 2008, Petitioner's Request for Administrative Remedy was granted in part. (Petition, pg. 22.) The BOP agreed to immediately re-review Petitioner's placement in light of the SCA. The BOP found, however, a period of home confinement was limited to 10 percent of Petitioner's term of imprisonment and would be determined after Petitioner was placed in a RRC.

On July 21, 2008, Petitioner filed a "Regional Administrative Remedy Appeal." (Petition, pg. 17.) Petitioner complained that he had not yet been re-reviewed for placement in a RRC. Petitioner also alleged that BOP had the authority to transfer Petitioner to a RRC for more than 12 months. Petitioner again contended that the BOP had the authority to place him directly in home confinement. Petitioner asked the BOP to place him in 12 months RRC and 3 months home confinement or, in the alternative, 15 months RRC. (*Id.*)

On August 15, 2008, the BOP responded to Petitioner's July 21, 2008 Regional Administrative Remedy Appeal. In its response, the BOP stated that Petitioner's eligibility for placement had been considered by his Unit Team on August 2, 2008 and that the Unit Team conducted an individualized assessment pursuant to the SCA. The BOP concurred with the Unit Team's assessment that a RRC placement of six months was sufficient for Petitioner and that Petitioner's placement in home confinement would be determined after his transfer to RRC. The BOP therefore denied his appeal.

On August 29, 2008, Petitioner filed a Central Office Administrative Remedy Appeal with the BOP. (Petition, pg. 13.) Petitioner later amended his Central Office Administrative Remedy Appeal on September 11, 2008. (Petition, pg. 12.) Petitioner contended that he was entitled to 12 months RRC and 3 months home confinement. Petitioner did not dispute that the Unit Team has individually assessed him on August 2, 2008; however, he disputed that the Unit Team recommended six months RRC. According to Petitioner, the Unit Team authorized nine months RRC placement and forwarded the request to Region.

On November 21, 2008, the BOP issued a decision denying Petitioner's appeal and concurring with the actions of its staff. BOP indicated it could find no evidence to substantiate Petitioner's claim that his Unit Team authorized nine months RRC placement. The letter decision states that staff had discussed with Petitioner the possibility of a six to nine-month RRC placement, but ultimately concluded that Petitioner did not meet the qualifications for more than a six-month RRC placement and notified him of this conclusion.

Between the time that Petitioner appealed to the Central Office and the Central Office's denial of that appeal, Petitioner completed two "Inmate Request to Staff" forms in which he summarized several meetings with BOP officials, including his case manager, the Unit Manager and the Acting Camp Administrator. Petitioner claims that on September 11, 2008, these BOP officials notified him that he was reviewed for placement on August 2, 2008, and that the BOP determined that, pursuant to the guidelines set forth in the SCA, Petitioner should not require more than six months placement in RRC. (Petition, pgs. 15-16.) Petitioner alleged that on August 7, 2008, his case manager asked him if he would "settle for 9 months" in RRC. According to Petitioner, at the September 11, 2008 meeting, he was told that because he had appealed his original placement decision, his case manager did not file the submission for the nine months RRC on his behalf. Petitioner accused the BOP of retaliation in his appeal. (*Id.*)

On September 22, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, raising the same claims presented in the pending Petition. (CV08-510-TUC-FRZ, Doc. No. 1.) On November 6, 2008, the petition was dismissed without prejudice for failure to exhaust administrative remedies. (CV08-510-TUC-FRZ, Doc. No. 6.)

- 4 -

1    On November 24, 2008, Petitioner filed the instant Petition for Writ of Habeas Corpus.

2    In its January 27, 2009, Answer to the Petition, Respondent submitted the affidavit of Wyona Mixon, Petitioner's case manager. (Answer, Ex. 2.) In her affidavit, Mixon avers that Petitioner was originally reviewed for RRC placement on May 8, 2008, and re-reviewed on October 2, 2008. (Answer, Ex. 2, ¶ 4.) The two reviews are attached as exhibits and show Petitioner's signature at the bottom of each. (Answer, Ex. 2, and Ex. 2, Attachments 1 & 2.) Mixon states that the October 2, 2008 review was conducted based on the SCA factors and related BOP guidelines. (Answer, Ex. 2, ¶4.) Mixon further states that Petitioner requested a 12-month home confinement or a 12-month placement in a RRC, but was advised that home confinement status is only available after placement in a RRC. According Mixon, the BOP Unit Team recommended 180 days placement in an RRC and submitted the transfer paperwork for Petitioner's RRC placement.[2] (Answer, Ex. 2.) In her declaration, Mixon did not mention any intervening reviews, such as the August 2, 2008, review that is referred to by Petitioner and BOP officials in the administrative appeals paperwork.

In a declaration submitted to the Court on February 20, 2009, Petitioner denies that he was "individually assessed using an identified procedure pursuant to the five enumerated factors of Title 18 Section 3621(b)." (Doc. No. 11.) Petitioner also avows that he has not signed any paperwork related to his transfer to a RRC. (*Id*.)

On April 15, 2009, the Defendant filed a Notice indicating that on April 9, 2009, Petitioner was assigned a 180-day placement in an RRC in El Monte, California, which is scheduled to begin May 22, 2009. (Doc. No. 14.)

**Discussion**

The Second Chance Act directs the BOP to ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the

---

[2]The "program review report" generated on October 2, 2008 reflects a "CCC" recommendation of "60-180 days" and notes that "home confinement is considered by/thru the halfway house once there." (Answer, Ex. 2, Attachment 2.)

- 5 -

reentry of that prisoner into the community. *See* 18 U.S.C. § 3624(c)(1). The statute specifies that such conditions may include a community correctional facility. *Id.* With respect to home confinement, the same statute states that "[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The BOP is to utilize the five factors sets forth in 18 U.S.C. § 3621(b) to make such determinations. That statute provides, in relevant part:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>
>   (1) the resources of the facility contemplated;
>
>   (2) the nature and circumstances of the offense;
>
>   (3) the history and characteristics of the prisoner;
>
>   (4) any statement by the court that imposed the sentence--
>
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>     (B) recommending a type of penal or correctional facility as appropriate; and
>
>   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

To obtain a writ of habeas corpus, Petitioner must show that "[h]e is in custody in violation of the Constitution or laws or statutes of the United States." 28 U.S.C. § 2241(c)(3). Petitioner identifies two grounds for review in his Petition; both grounds essentially allege that the BOP incorrectly applied its own contradictory rules and regulations, rather than the five factors enumerated in 18 U.S.C. § 3621(b), to categorically exclude inmates from consideration for eligibility for placement in a RRC. Petitioner contends that the BOP failed to apply 18 U.S.C. § 3621(b) in determining when to transfer Petitioner to a RRC. According to Petitioner, the BOP routinely calculates a prisoner's date of transfer to a RRC as 6 months from the

prisoner's projected good time release date, instead of making an individualized determination as required by 18 U.S.C. § 3621(b).  Petitioner claims that the BOP has a computerized "boilerplate" method of computing each sentence by inputting the committed date, followed by the length of the sentence, which then calculates a "pre-release presperation date" which is the last 10 percent or six months of an inmate's projected good-time release date and that this practice categorically excludes inmates from consideration and results in an improper application of the five factors.  (Petition, pp. 4-5.)

Petitioner does not explain how the BOP incorrectly applied its rules and regulations in his particular circumstances, rather than the five factors enumerated in 18 U.S.C. § 3621(b). Petitioner does not present any evidence that the process utilized by BOP violated any statute or regulation.  Nor does Petitioner present any evidence that his individual circumstances required a 12-month placement.  Petitioner appears to rely solely on the fact that the BOP repeatedly recommended six months of RRC for him to support his argument that the BOP is in violation of the SCA.  This, however, does not demonstrate that the BOP incorrectly applied regulations to reach that result.[3]

The SCA does not mandate a RCC placement of 12-months or prohibit a placement of less than 12-months.  *See* 18 U.S.C. § 3624(c); *Roman v. Berkebile*, 2008 WL 4559825 at *2 n.2 (N.D. Tex. Oct. 6, 2008) (prisoners my receive a maximum of 12 months under the Second Chance Act, but there is no presumptive minimum).  Although Petitioner may understandably believe that a longer RRC placement would benefit him, a petitioner "is not entitled to a writ of habeas corpus simply because he thinks the Bureau of Prisons misjudged his situation and made a bad decision about when he should be transferred to an RRC."  *Segovia-Reyna v. Cruz*,

---

[3]Notably, the paperwork submitted by Petitioner demonstrates that the BOP is not categorically limiting RRC placement of every inmate to six months time.  (Doc. 12, p. 21-22.)  Petitioner submitted a declaration by his caseworker Mixon, in an unrelated case involving similar issues.  (*Id.*)  Although the declaration was attached to show that Mixon failed to properly include the phrase "under penalty of perjury" in other declarations, a review of the declaration shows that the inmate in that matter received a recommendation of 210-300 days of RRC placement - in other words, more than the six months Petitioner claims is categorically imposed through a boilerplate method of computation.  (*Id.*)

1  2009 WL 279482 (D. Minn. 2009).  The SCA only requires that the BOP consider an inmate
2  for RRC placement; it does not mandate that the inmate actually get such placement.
3  *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir. 2007).   In sum, an inmate is entitled to a
4  good faith and proper exercise of discretion by the BOP.  *Rodriguez v. Smith*, 2007 WL 628663
5  (E.D.Cal. Feb. 28, 2007), *aff'd* 541 F.3d 1880, 1887 (9th Cir. 2008).  Bruce has failed to
6  demonstrate that the BOP failed to properly exercise its discretion in this matter.

7  Although the Magistrate Judge concludes that Petitioner failed to demonstrate that his
8  confinement is illegal, Respondent's contention that "the record shows that Petitioner was
9  individually assessed for RRC placement pursuant to the Second Chance Act" warrants some
10 discussion. In support of this assertion, Respondent directs the Court to Exhibit 1/Attachment
11 3 and Exhibit 2 of the Answer.  Exhibit 1/Attachment 3 of the Answer consists of documents
12 related to Petitioner's administrative appeal of his grievance.  Exhibit 2 of the Answer is a
13 Declaration by Wynona Mixon.  These records relied upon by Respondent are not entirely
14 consistent and do not clearly demonstrate BOP's evaluation process.

15 There is a conflict in the records as to whether the 18 U.S.C. § 3621(b) assessment
16 occurred on  August 2, 2008 or on October 2, 2008.  The administrative appeal records indicate
17 the re-review occurred on August 2, 2008.  According to the Declaration of Wynona Mixon,
18 Petitioner received an individualized assessment as required by 18 U.S.C. § 3621(b) on October
19 2, 2008.  Ms. Mixon's Declarations do not address the re-review on August 2, 2008.

20 There is no documentary evidence that Petitioner was assessed according to the five
21 factors listed in 18 U.S.C. § 3621(b).  In her declaration, Ms. Mixon refers to the attached
22 "Program Review Report."  That Report appears to consider Petitioner's overall conduct as a
23 prisoner, but does not contemplate a specific RRC facility, the nature of Petitioner's offense,
24 any statements by the Court, or any policy statements issued by the Sentencing Commission.
25 Moreover, although the May 8, 2008 review apparently did not involve an analysis of the SCA
26 factors and the October 2, 2008 review did, both reports indicate that the same criteria were

considered - none of which are factors listed in the SCA.[4]  In addition, Ms. Mixon's statement that "the Unit Team recommended 180 days placement in an RRC" is in conflict with the Program Review Report, which states "CCC Recommendation: 60-180 days."  Finally, neither the reports, nor Mixon's declaration indicate how the facts and information set forth in the reports correspond to the SCA factors and the BOP's decision regarding RCC placement.  In sum, the BOP's submissions would be more persuasive if the documentation was consistent and clearly related to the SCA factors.

Although Respondent's declarations and attachments are not model, it nonetheless appears that an individualized review, in accordance with the SCA, was done by the BOP, at least on August 2, 2008, if not a second time on October 2, 2008.  As detailed above, on July 1, 2008, Petitioner's Request for Administrative Remedy was granted in part and the BOP agreed to immediately re-review Petitioner's placement in light of the SCA.  That review apparently occurred on August 2, 2008.  The appeal paperwork shows that on August 15, 2008, the BOP Regional Director denied Petitioner's appeal on the ground that "on August 2, 2008, your unit team assessed your request for maximum RRC placement."  In his appeal of the Regional Director's decision, Petitioner implicitly acknowledges that the re-review did in fact occur.  In his response to the decision, Petitioner indicates that the Regional Director misstated the Unit Team's recommended [after re-review] of only six months RRC; according to Petitioner, the Unit Team had recommended up to 9 months RRC.

In addition, according to the Declaration of Wynona Mixon, Petitioner also received an individualized assessment as required by 18 U.S.C. § 3621(b) on October 2, 2008.  Mixon stated that the Unit Team applied the SCA factors and utilized the standards set forth in the Guidance Memorandum for Chief Executive Officers.  The Guidance Memorandum provides: "Assessing

---

[4]The Program Review Report indicates assessment of: (1) work performance rating; (2) incident reports since last program review; (3) "frp plan/progress/payments;" (4) release preparation participation; (5) CCC recommendation; (6) progress made since last review; (7) goals for next program review meeting; (8) long term goals and (9) other inmate requests/term actions.

- 9 -

1 inmates under the [five factors set forth in the Second Chance Act] necessarily includes
2 continuing to consider the more specific, and familiar, correctional management criteria found
3 in PS 7310.04, including, but not limited to, the inmate's needs for services, public safety, and
4 the necessity of the Bureau to manage its inmate population responsibility." (Doc. 10-2, p. 4.)

As the Second Chance Act only provides that the BOP consider an inmate for RRC placement, not that the inmate actually get such placement, *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir. 2007), and as the Petitioner has failed to demonstrate any irregularities in the BOP's evaluation of his circumstances, the Magistrate Judge therefore recommends that the Petition be denied.

**Conclusion**

Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order DENYING the Petition for Writ of Habeas Corpus (Doc. No. 1).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 08-619-TUC-FRZ**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 29th day of April, 2009.

_____
Jennifer C. Guerin
United States Magistrate Judge

- 10 -